**In re Michelle V. SEBIO, Debtor.**

**Bankruptcy No. 99–11453–WCH.**

United States Bankruptcy Court,
D. Massachusetts,
Eastern Division.

Aug. 5, 1999.

Barry G. Braunstein, Timothy M. Mitchelson, Riemer & Braunstein, Boston, MA, for Revolution Portfolio, LLC.

Joseph G. Butler, Barron & Stadfeld, Boston, MA, for debtor.

## DECISION

WILLIAM C. HILLMAN, Chief Judge.

### I.  *Introduction*

The matters before the Court are Revolution Portfolio, LLC's ("Revolution") objection to the Debtor's homestead exemption and the Debtor's motion to avoid Revolution's lien pursuant to 11 U.S.C. § 522(f).  For the reasons set forth below, I will overrule Revolution's objection and allow the Debtor's motion.

### II.  *Factual Background*

The following facts have been stipulated by the parties.  On September 21, 1990, Michelle V. Sebio (the "Debtor") and her husband bought a house in Chatham, Massachusetts (the "Chatham Property").  At that time, however, they maintained their primary residence in Franklin, Massachusetts (the "Franklin Property").  In September of 1998, while the Debtor and her husband still resided at the Franklin Property, the Debtor's husband recorded a declaration of homestead on the Chatham Property pursuant to the Massachusetts Homestead Act (the "1998 declaration of

homestead"). MASS.GEN.LAWS ch. 188, § 1. In October of 1998, Revolution levied an execution on the Chatham Property on a judgment obtained in Suffolk Superior Court against the Debtor and her husband in the amount of $802,953.79. A sale of the property was subsequently suspended. In November of 1998, the Debtor and her husband moved into the Chatham Property. On January 7, 1999, the Debtor also recorded a declaration of homestead on the Chatham Property (the "1999 declaration of homestead").

On February 22, 1999, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code. In Schedule A, the Debtor stated that she has a 50% interest in the Chatham Property and that its market value is approximately $148,000. Thus, according to the Debtor, the value of her interest in that property is $74,000. Also in Schedule A, the Debtor stated that the Chatham Property is subject to a mortgage with an approximate balance of $104,000, leaving the Debtor and her husband with approximately $44,000 of equity in the property.[1] In Schedule C, the Debtor, pursuant to 11 U.S.C. § 522(b), elected the state exemptions and claimed a $100,000 homestead exemption in the Chatham Property in accordance with ch. 188, § 1. Revolution does not dispute these figures.

## III. *Discussion*

### A. *The Objection to Exemption*

In its objection to the Debtor's homestead exemption, Revolution challenges the validity of each of the two declarations of homestead. With respect to the 1998 declaration of homestead, Revolution argues that the fact that the Debtor and her husband did not reside at the Chatham Property at the time of the declaration renders the declaration invalid. With respect to the 1999 declaration of homestead, Revolution argues that its prior levy of execution on the Chatham Property vested title to the property in Revolution, thus precluding the Debtor's ability to declare a valid homestead.

■ Revolution cites *Lee v. Miller*, 93 Mass. 37 (1865), in support of its argument that the Massachusetts Homestead Act requires the declarant to occupy the premises at the time of the declaration. While the Debtor offers no challenge to the merits of this argument, I find it to be in error as a matter of law. At the time that the Supreme Judicial Court decided *Lee*, the Massachusetts Homestead Act read differently than it does today. In 1865, the relevant portion of the statute provided: "A householder who has a family shall be entitled to acquire an estate of homestead ... in the land and buildings thereon owned or rightly possessed by lease or otherwise and occupied by him as a residence...." G.S. 1860, c. 104, § 1. The statute has since been amended and presently reads as follows: "An estate of homestead ... in the land and buildings may be acquired pursuant to this chapter by an owner or owners of a home or one or all who rightfully possess the premise by lease or otherwise and who occupy *or intend to occupy* said home as a principal residence...." MASS.GEN.LAWS ch. 188, § 1 (emphasis added). Thus, to the extent that *Lee v. Miller* requires the declarant of a homestead to occupy the premises at the time of the declaration, that case has been superceded by statute.

■ The question, then, is whether the Debtor and her husband, at the time of the declaration, did in fact intend to occupy the Chatham Property as their principal residence. The answer is not apparent from the pleadings of the parties. According to Fed.R.Bankr.P. 4003(c), "the objecting party has the burden of proving that the exemptions are not properly claimed." Therefore, I hold that Revolution has not met its burden of proof in objecting to the validity of the 1998 declaration. *See Lester v. Storey (In re Les-*

---

1. According to the Debtor's motion, the Chatham Property is also subject to an attachment securing a disputed obligation in the approximate amount of $43,200.

*ter* ), 141 B.R. 157, 163 (S.D.Ohio 1991) ("[I]n the face of a reasonable claim and the absence of any evidence to the contrary, the burdened party must lose."). Because I find that the 1998 declaration of homestead is valid, the 1999 declaration is invalid. *See Dwyer v. Cempellin,* 424 Mass. 26, 30, 673 N.E.2d 863, 866 (1996) (holding that "if more than one owner claims an exemption in the same residence, only the first to record a valid declaration of homestead would receive homestead protection. Any subsequent recording would be entirely ineffective without a release of the first homestead claim.").[2]

■ The inquiry, however, does not end there. The question arises whether a debtor may claim an exemption under 11 U.S.C. § 522(b)(2)(A) based on the non-debtor spouse's declaration of homestead under ch. 188, § 1. Section 522(b)(2)(A) provides that "an individual debtor may exempt from property of the estate ... any property that is exempt under ... State or local law...." As the Court of Appeals for the Seventh Circuit noted:

> [T]he purpose of section 522(b)(2)(A) is to afford a state an opportunity to substitute its judgment for that of the Congress with respect to what property ought to be excluded from the bankruptcy estate. Our basic task, therefore, is to discern the will of the state legislature: what was the exemption scheme that the legislature wished to make available to the state's residents as an alternative to the federal exemptions set forth in the Bankruptcy Code?

**2.** In *Dwyer,* the Supreme Judicial Court interpreted ch. 188, § 1 as it read prior to a 1983 amendment to the statute. That amendment replaced language limiting eligibility for the exemption to a single declarant with language allowing the exemption to be acquired "by an owner or owners of a home or one or all who rightfully possess the premise by lease or otherwise." *See* St.1983, ch. 220; *Dwyer v. Cempellin,* 424 Mass. 26, 27, n. 4, 673 N.E.2d 863, 865, n. 4. The 1983 amendment, however, left unchanged the restriction that "only one owner may acquire an estate of homestead in any

*In re Geise, Jr.,* 992 F.2d 651, 658 (7th Cir.1993).

I recently held that one spouse's declaration of homestead under ch. 188, § 1 operates to exempt both spouses' equity in the property to the extent of $100,000. *See In re Ballirano,* 233 B.R. 11, 14 (Bankr.D.Mass.1999). The *Ballirano* decision was grounded on the fact that the language of ch. 188, § 1, as well as cases interpreting the statute, emphasize the "importance of a homestead in protecting and benefitting both the declarant and the declarant's family...." *Id.* (citing *Dwyer,* 424 Mass. at 29–30, 673 N.E.2d at 866; *Shamban v. Masidlover,* 429 Mass. 50, 53, 705 N.E.2d 1136, 1138 (1999)). Because the Debtor's and her husband's combined equity in the Chatham Property ($44,000) "is exempt under ... State or local law," (ch. 188, § 1), that equity is exempt from the Debtor's estate pursuant to § 522(b)(2)(A).

### B. *Lien Avoidance*

As the Debtor holds a valid exemption in the Chatham Property, I must now determine whether Revolution's lien impairs that exemption. Under 11 U.S.C. § 522(f)(1)(A), a debtor may "avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section if such lien is a judicial lien ..." The § 522(f)(2)(A) lien avoidance formula provides:

> such home for the benefit of his family." Reconciling these two statements, it appears that the Massachusetts Legislature intended to allow unrelated owners of the same home to each declare a homestead exemption, but limited the availability of the exemption to one member of each family residing in the same home. Therefore, the *Dwyer* court's statements quoted above remain accurate pronouncements of the law where the "owners" are members of the same family, as is the case here.

**4**

[A] lien shall be considered to impair an exemption to the extent that the sum of—

(i) the lien,

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

Applying the formula to the facts of this case, the sum of the targeted judicial lien ($802,953.79), all other liens ($104,000),[3] and the amount of the Debtor's exemption ($100,000) exceeds the value of the Debtor's interest in the property in the absence of any liens ($74,000) by $932,953.79. *See In re Pascucci*, 225 B.R. 25, 28 (Bankr. D.Mass.1998). Thus, Revolution's lien must be avoided in full.

### IV. *Conclusion*

For the foregoing reasons, I will enter a separate order overruling Revolution's objection to the Debtor's exemption and granting the Debtor's motion to avoid Revolution's lien.

---

**3.** For the purposes of this analysis, I will disregard the lien described by the Debtor as securing a "disputed" $43,200 debt.